IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00382-WDM-CBS

ROBERT MOLINA

      Plaintiff,

v.

RIFLE CORRECTIONAL CENTER (R.C.C.),
CASE MANAGER YOUNG (R.C.C),
CASE MANAGER GALLEGOS (R.C.C),
WARDEN BOBBY JOHNSON (R.C.C),
LT. JOHNSON (R.C.C.),
CAPTAIN HORTON (R.C.C),
UNNAMED STAFF OF (R.C.C),
COLORADO DEPARTMENT OF CORRECTIONS (C.D.C.),
UNNAMED STAFF OF (C.D.O.C.),
CROWLEY COUNTY CORRECTIONAL FACILITY (C.C.C.F.),
ASSISTANT WARDEN MILLER OF (C.C.C.F.),
ASSISTANT WARDEN BRIDGES OF (C.C.C.F.),
PROGRAMS MANAGER JIM HALE OF (C.C.C.F.),
WARDEN BRENT CROUSE OF (C.C.C.F.),
CHIEF OF SECURITY SELMON OF (C.C.C.F.),
UNNAMED STAFF OF (C.C.C.F.),
CORRECTIONS CORPORATION OF AMERICA (C.C.A.),
UNNAMED STAFF OF OF (C.C.A.),
WASHINGTON STATE DEPARTMENT OF CORRECTIONS (W.S.D.O.C.),
UNNAMED STAFF OF (W.S.D.O.C.),
DENVER RECEPTION AND DIAGNOSTIC CENTER (D.R.D.C.),
UNNAMED STAFF OF (D.R.D.C.),
PARK COUNTY JAIL (P.C.J.), and
UNNAMED STAFF AT (P.C.J.),

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

      The matters before the court are as follows:

1.    Defendants, Bridges, Crouse, Miller, Hale, Selmon, Crowley County Correctional Facility ("CCCF"), and Correction Corporation of America's ("CCA") Motion to Dismiss [#19], filed on July 11, 2005; Plaintiff filed his Response [#39] on August 15, 2005; these Defendants filed their Reply [#54] on September 13, 2005;

2.    Defendant Washington Department of Corrections' ("WDC") Motion to Dismiss [#24], filed on July 25, 2005; Plaintiff filed his Response [#38] on August 15, 2005;

3.    Defendant Park County Detention Center's ("PCDC") Motion to Dismiss [#26], filed on July 25, 2005; Plaintiff filed his Response [#52] on September 12, 2005; Defendant filed its Reply [#55] , on September 30, 2005; and

4.    Defendant Warden Johnson, Lieutenant Johnson, Horton, Gallegos, Young, Colorado Department of Corrections ("CDC"), Denver Reception and Diagnostic Center ("DRDC"), and Rifle Correctional Center's ("RCC") Motion to Dismiss [#31], filed on August 9, 2005; Plaintiff filed his Response [#47] on August 29, 2005; these Defendants filed their Reply [#53] on September 13, 2005.

The court has reviewed the Motions to Dismiss, the Responses, the Replies, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons discussed below, it is recommended that the Motions to Dismiss be granted, and that this civil action be dismissed with prejudice.

2

## I.    Background.

Plaintiff, a Colorado state prisoner, filed on May 19, 2005, a *pro se,* amended

complaint asserting six claims that Defendants have subjected him to cruel and unusual

punishment.  Plaintiff claims that prison officials failed to protect him from being

assaulted at the Rifle Correctional Center in September 2003; that he was denied

adequate medical treatment for a hand injury at the Denver Reception and Diagnostic

Center; that prison officials failed to prevent a prison riot at the Crowley County

Correctional Facility in July 2004; that prison guards shot at him during that July 2004

riot when he sought protection from rioting inmates; that prison conditions at the

Crowley County Correctional Facility were unsafe and unsanitary after the July 2004

riot; and that he was denied adequate medical and psychiatric care at the Park County

Jail.  Plaintiff claims that he exhausted the prison grievance procedure with respect the

his first claim against Defendants Warden Johnson, CDC, DRDC, Lieutenant Johnson,

Horton, Gallegos, RCC, and Young and that prison officials prevented him from

exhausting administrative remedies for his remaining five claims against the remaining

Defendants.

Defendants assert that Plaintiff's claims fail to state a claim upon which relief

may be granted, requiring dismissal under **FED. R. CIV. P.** 12(b)(6).

## II.    Standard of Review.

Since Plaintiff appears *pro se,* this court will construe liberally his pleadings and

other papers, holding them to a less stringent standard than formal papers filed by

attorneys.  ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991).

3

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Ramirez v. Dept. of Corrections,* 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted). The court should not dismiss a complaint under Rule 12 (b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle him to relief." *Ramirez,* 222 F.3d at 1240 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

III.   **Analysis.**

   A.   **Defendants Bridges, Crouse, Miller, Hale, Selmon, Crowley County Correctional Facility ("CCCF"), and Correction Corporation of America's ("CCA") Motion to Dismiss [#19], filed on July 11, 2005.**

Only Claims Three, Four, and Five concern the conduct of these Defendants. The claims are a result of a riot that occurred at the CCCF on July 20, 2004. In Claim Three of his Complaint, Plaintiff claims that these Defendants violated his Eighth Amendment rights by their deliberate indifference to his safety, which resulted in the riot. In Claim Four, Plaintiff claims that these Defendants violated his Fourteenth Amendment rights by failing to take special precautions to protect Plaintiff and other unarmed, non-threatening inmates after the riot occurred. Finally, in Claim Five Plaintiff claims that these Defendants violated his Eighth Amendment rights by retaliating against him after the riot and placing him in a dirty cell with alternating hot and cold temperatures.

4

### 1.    Personal Participation.

Plaintiff brings each of the aforementioned claims against these Defendants pursuant to **42 U.S.C. § 1983.**   Under **§ 1983** jurisprudence, a Plaintiff must allege facts sufficient to show that, if proven, a defendant personally participated in the alleged violation.   *Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976).   "A defendant cannot be liable under § 1983 unless personally involved in the deprivation."   *Olsen v. Sotts,* 9 F.3d 1475, 1477 (10th Cir. 1993).   Conclusory allegations of participation are insufficient.   *Handy v. Price,* 996 F.2d 1064, 1068 (10th Cir. 1993); *Pride v. Does,* 997 F.2d 712, 716 (10th Cir. 1993) (Conclusory, nonspecific, and generalized allegations of constitutional deprivations are insufficient).

Instead, a plaintiff must establish specific facts showing the personal involvement of each named individual defendants.   *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997).   Further, not only must the defendant have known about the deprivation, he must also have been in a position to prevent it from occurring in the first instance, and he must have engaged in a deliberate act not to intervene.   *See Jenkins v. Woods,* 81 F.3d 988, 995 (10th Cir. 1996) ("A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance).

Moreover, an official cannot be liable for actions that occur in a prison merely because he has general supervisory responsibility.   *Smith v. Boyd,* 945 F.2d 1041, 1043 (8th Cir. 1991).   Officials not personally involved in the alleged violation are not subject to a civil rights claim under a *respondeat superior* theory merely because they

hold positions of authority.  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

Here, Plaintiff fails to describe how each Defendant personally participated in the alleged constitutional violations.  The only reference to Defendants in the Complaint is that Defendants Crouse, Miller, Bridges, Selman, and Hale were aware that the transfer of close to 200 out-of-state prisoners was potentially dangerous, and that they took no precautions to supply much needed staff with proper training to address the dangerous condition.  Plaintiff's Complaint contains no additional allegations concerning the personal participation of these Defendants, nor does it specifically reference Defendants CCA or CCCF.

These conclusory allegations are insufficient to establish the personal participation of Defendants Crouse, Miller, Bridges, Selmon or Hale.  Plaintiff provides no information with respect to the particular involvement of each Defendant in the transfer, his responsibility to provide staff, how staffing caused the riot, or his deliberate indifference to a risk of harm to Plaintiff.  Because Plaintiff has not detailed the personal participation of Defendants Crouse, Miller, Bridges, Selmon, and Hale, they are entitled to dismissal as a matter of law and should be dropped as parties to this action.

Finally, although Plaintiff names Defendants CCA and CCCF in his Complaint, the Complaint is devoid of allegations concerning the participation of these Defendants.  Plaintiff fails to allege any policy, custom, or practice by CCA/CCCF that violated his constitutional rights.  *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (finding that an entity is liable for an employee's acts under § 1983 only if the plaintiff

6

can show that a custom or policy directly caused the constitutional violation).  Further,

Plaintiff fails to allege that similar constitutional violations occurred to individuals other

than Plaintiff.  *See Randle v. City of Aurora,* 69 F.3d 441, 447 (10th Cir. 1995) (finding

that such a showing is required to establish that a custom or practice existed).

Therefore, Plaintiff's claims against these Defendants should be dismissed.

### 2.    *Exhaustion of Administrative Remedies.*

Additionally, and alternatively, Plaintiff failed to exhaust administrative remedies

under the Prison Litigation Reform Act ("PLRA") prior to filing his claims.  "The statutory

exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not

authorized to dispense with it."  *Beaudry v. Corrs. Corp. of Am.,* 331 F.3d 1164, 1167

(10th Cir. 2003);  *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (finding that exhaustion

requirement applies to all aspects of prison life, including "all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong.").  The exhaustion requirement

contains no exception for futility.  *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001).

Here, Plaintiff admits in his Complaint that he has not exhausted administrative

remedies with respect to his claims against these Defendants.  Instead, Plaintiff claims

that he was denied grievance forms by Park County Jail authorities, and that prison

authorities at Arrowhead Correctional Center told Plaintiff he was too late to file a

grievance.  Notwithstanding this assertion, Plaintiff fails to provide proof of his efforts to

exhaust his administrative remedies and, instead, asks this Court to rely on his

unsupported statement that he was precluded from exhausting his administrative

7

remedies.  Because Plaintiff fails to provide proof of exhaustion or efforts to exhaust,

his claims for damages against these Defendants should be dismissed under PLRA.

**B.      Defendant Washington State Department of Corrections' ("WSDC")
         Motion to Dismiss [#24], filed on July 25, 2005.**

Only Claims Three and Four concern the WSDC Defendant.  Plaintiff implicates

Defendant WSDC in Claim Three by stating: "[Defendant] failed to implement policys

(sic) to control or separate (sic) prisoners who endangered life of others. . .

lawlessness during the riot had inmates flooding, burning and destroying everything . . .

these incidents caused plaintiff physical distress and severe mental anguish and shall

be awarded monetary funds in the range of $2.2 million. . .".  **Compl, p. 6.**  Plaintiff

implicates Defendant WSDC in Claim Four by stating that prison officials at WSDC

failed to take special precautions to protect him and, as a result, "put unnecessary pain

and infliction on plaintiff."  **Compl., p. [n/a].**  Essentially, both claims seek relief for an

alleged violation of Plaintiff's Eighth Amendment rights.  Plaintiff seeks $2.2 million in

monetary funds to be jointly and severally divided among the Defendants.   Defendant

WSDC argues that any claims brought by Plaintiff against it are barred by the Eleventh

Amendment and **§ 1983** jurisprudence.

To begin, neither states nor state officials acting in their official capacities are

subject to suits under **42 U.S.C.** § **1983** because they are not persons within the

meaning of **§ 1983**.  Plaintiff attempts to save his claims by claiming unnamed prison

officials, possibly the executive director of WSDC who may have approved the transfer

of violent prisoners to CCCF, where the riot occurred.  This is too vague to save

Plaintiff's claims.

Even if Plaintiff could specifically name the individuals who allegedly caused him harm in approving the transfer, the Supreme Court explicitly rejected the notion of governmental entity liability based on either a respondeat superior or vicarious liability theory.   *Monell v. New York City Dep't of Soc. Svs.,* 436 U.S. 658, 694 (1978).  An entity cannot be held liable under **§ 1983** simply because it employs a person who violates another's constitutional rights.  *Cf. Randle v. City of Aurora,* 69 F.3d 441, 447 (10th Cir. 1995).  Rather, an entity is liable for an employee's actions under **§ 1983** only if a plaintiff shows that a custom or policy of the entity directly caused the constitutional violation.  *City of Canton Ohio v. Harris,* 489 U.S. 378, 385 (1989).  Such a showing can be made by demonstrating that the violation was caused by an express policy of the entity or by a well-settled and widespread practice or custom of the entity.  *Sekarek v. City & County of Denver,* 1 F. Supp. 2d 1191, 1197 (D. Colo. 1998).  To show that a custom or practice existed, a plaintiff, at a minimum, must allege that similar constitutional violations occurred to an individual other than plaintiff.  *Randle,* 69 F.3d at 447.

Here, Plaintiff fails to allege that similar constitutional violations occurred to other prisoners.  Plaintiff has failed to claim that a custom or practice resulted in the alleged deprivation.  Instead he claims that Defendant had a policy and practice of transferring "high threat" prisoners out of state, resulting in violence.  **Compl., p. [n/a].** This "policy," Plaintiff argues, resulted in a deliberate indifference to prisoners' health and safety.  **Id.**  However, this does not constitute an "express policy" of Defendant.

9

Nor does it establish a "custom" because Plaintiff does not claim specify other instances in which Defendant transferred "high threat" prisoners out of state, resulting in violence.

Alternatively, in the absence of an express policy or custom, a constitutional violation may be found to be due to a policy to the entity if a person with policymaking power for the entity made the decision that led to the alleged violation. *Id.; City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988).  Plaintiff does not claim with specificity that a person with policymaking power for Defendant made a decision that led to the alleged deprivation of his rights.   He vaguely states that "possibly . . the Executive Director" may be responsible, but he fails to point to any decision made by the executive director that resulted in a constitutional violation.  This is too vague to state a claim for relief.  Therefore, Plaintiff's claims against this Defendant should be dismissed, and this Defendant should be dropped from this action.

> **C.    Defendant Park County Detention Center's ("PCDC") Motion to Dismiss [#26], filed on July 25, 2005.**

Only Claim Six implicates Defendant PCDC.  Plaintiff claims that the Park County Jail denied him medical treatment and psychiatric care, constituting cruel and unusual punishment.  The denial of medical and psychiatric care allegedly caused Plaintiff's depression and anxiety to increase.

Plaintiff was transferred to Park County Jail in July, 2004.  After arriving at the jail, Plaintiff was denied his pain and psychiatric medication for several days.  A nurse at the facility altered Plaintiff's medication by decreasing his Alivil dosage from 400

10

milligrams to 300 milligrams.  The nurse altered Plaintiff's dosage because Plaintiff was complaining of respiratory and dizziness problems from the high altitude at the jail. Plaintiff claims this change in medicine caused his depression and anxiety to skyrocket. Further, Plaintiff claims that after arriving at the jail, Plaintiff had to wait days to weeks to receive mental health treatment, despite being near suicidal.  Plaintiff was transferred out of Park County Jail within two months.

Defendant claims that it is immune from Plaintiff's claim for punitive damages under **42 U.S.C. § 1983.**  Further, Plaintiff's claim should be dismissed because Plaintiff failed to exhaust administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), and because Plaintiff has not alleged a physical injury as required by PLRA.  Finally, Defendant claims that it cannot be found liable because Plaintiff has failed to allege a custom, policy, or practice that resulted in Plaintiff's alleged injury.

Defendant is entitled to dismissal of Plaintiff's claim against it because Plaintiff has failed to exhaust his administrative remedies against Defendant in accordance with PLRA, **42 U.S.C. § 1997e(a).**   The exhaustion requirement is broad and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  ***Porter v. Nussle,*** 534 U.S. 516, 532 (2002).  Plaintiff admits in his Complaint that he has not exhausted administrative remedies with respect to his claim against this Defendant. Plaintiff claims he was denied grievance forms by the Park County Jail authorities. However, Plaintiff fails to provide proof of his efforts to exhaust his administrative

11

remedies.  Therefore, his claim against this Defendant should be dismissed.

Assuming *arguendo* that Plaintiff had provided proof of his exhaustion attempts, his claims against this Defendant should still be dismissed.  In ***Monell v. New York City Dep't of Soc. Svs.,*** 436 U.S. 658 (1978), the Supreme Court explicitly rejected the notion of governmental entity liability based on either a respondeat superior or vicarious liability theory.  ***Id.*** at 694.  An entity cannot be held liable under **§ 1983** simply because it employs a person who violates another's constitutional rights.  ***Cf. Randle v. City of Aurora,*** 69 F.3d 441, 447 (10th Cir. 1995).  Rather, an entity is liable for an employee's actions under **§ 1983** only if a plaintiff shows that a custom or policy of the entity directly caused the constitutional violation.  ***City of Canton Ohio v. Harris,*** 489 U.S. 378, 385 (1989).  Such a showing can be made by demonstrating that the violation was caused by an express policy of the entity or by a well-settled and widespread practice or custom of the entity.  ***Sekarek v. City & County of Denver,*** 1 F. Supp.2d 1191, 1197 (D. Colo. 1998).  To show that a custom or practice existed, a plaintiff at a minimum must allege that similar constitutional violations occurred to an individual other than plaintiff.  ***Randle,*** 69 F.3d at 447.  In the absence of an express policy or custom, a constitutional violation may be found to be due to a policy to the entity if a person with policymaking power for the entity made the decision that led to the alleged violation.  ***Id.; City of St. Louis v. Praprotnik,*** 485 U.S. 112, 123 (1988).

Here, Plaintiff's Complaint is void of any allegations against the Park County Jail sufficient to establish its liability.  Plaintiff does not point to a specific policy of the Park County Jail that resulted in an alleged delay in mental health care.  Even if Plaintiff

12

could specify a custom or express policy of Defendant, a delay in medical care alone does not establish a Eighth Amendment violation.  Plaintiff must do more than allege negligent treatment; instead, Plaintiff must claim that Defendant was deliberately indifferent to a serious medical condition.   ***Olson v. Sotts,*** 9 F.3d 1475, 1477 (10th Cir. 1993).  Finally, Plaintiff's claim that a nurse altered his medication resulting in harm, does not, without more, establish a claim of deliberate indifference.  Defendant is not liable based on supervisory authority for the acts of its employees.  ***See Smith,*** 945 F.3d at 1043.  Therefore, Plaintiff's claim against this Defendant should be dismissed, and this Defendant should be dropped from this action.

> **D.    Defendantd Warden Bobby Johnson, Lieutenant Anthony Johnson, Horton, Gallegos, Young, Rifle Correctional Center ("RCC"), Colorado Department of Corrections ("CDC"), and  Denver Reception and Diagnostic Center's ("DRDC") Motion to Dismiss [#31], filed on August 9, 2005.**

Only Claims One and Two specifically implicate these Defendants.  In Claim One of his Complaint, Plaintiff claims that these Defendants violated his Eighth Amendment rights by their deliberate indifference to his safety with respect to another prisoner and their failure to place him in protective custody.  This alleged failure resulted in an altercation with another prisoner, which led to Plaintiff punching his arm through a "steel-meshed glass safety window," resulting in injury to his arm.  In Claim Two, Plaintiff claims that these Defendants violated his Eighth Amendment rights by denying him proper medical treatment for his injured arm.

> **1.    Exhaustion.**

First, Plaintiff failed to exhaust administrative remedies under the Prison

Litigation Reform Act ("PLRA") prior to filing his claims. "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it." ***Beaudry v. Corrs. Corp. of Am.,*** 331 F.3d 1164, 1167 (10th Cir. 2003); ***Porter v. Nussle,*** 534 U.S. 516, 532 (2002) (finding that exhaustion requirement applies to all aspects of prison life, including "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The exhaustion requirement contains no exception for futility. ***Booth v. Churner,*** 532 U.S. 731, 741 n.6 (2001).

Here, Plaintiff admits that he has not exhausted administrative remedies on all of his Claims against these Defendants. Rather, Plaintiff states that "[a]t D.R.D.C. many grievances were either lost or never turned in . . . Time constriction restricted from doing anything else." **Compl., p. 7.** Additionally, Plaintiff states that at "Arrowhead" he was told that he could not file grievances due to time restrictions. ***Id.*** He claims that he filed "Step II" grievances but never received responses and "time constrictions restricted any further grieving." **Compl., p. 7.** However, a time barred grievance is not tantamount to exhaustion of administrative remedies. ***Ross v. County of Bernalillo,*** 365 F.3d 1181, 1186 (10th Cir. 2004) ("A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."). Because Plaintiff fails to provide proof of exhaustion or efforts to exhaust, his claims for damages against these Defendants should be dismissed under PLRA.

### 2.   *Plaintiff's First Claim for Relief.*

Alternatively, Plaintiff's claims against these Defendants should be dismissed for

failure to state a claim pursuant to **FED. R. CIV. P. 12(b)(6)**.  Plaintiff's First Claim for

relief alleges a failure to protect, which resulted in Plaintiff punching his arm through a

glass window.  Prison officials have a duty to protect prisoners from violence at the

hands of other inmates.   ***Farmer v. Brennan,*** 511 U.S. 825 (1994).  However, not

every injury suffered by on inmate at the hands of another inmate "translates into

constitutional liability for prison officials responsible for the victim's safety." ***Id.*** at 834.

A prison official only violates a duty to protect when two requirements are met: when

there is an objectively, sufficiently serious deprivation and when the prison official has

a deliberately indifferent state of mind. ***Id.***  Deliberate indifference entails something

beyond negligence; rather it is when an official is aware of facts from which an

inference of a substantial risk of serious harm exists and he does in fact draw that

inference. ***Id.*** at 837.

    Here, Plaintiff admits  that Defendants Young, Gallegos, Lt. Johnson, and

Captain Horton met with him about his claim that three individuals were threatening

him. **Compl., p. 4.**   Plaintiff was subsequently injured, but not by one of the individuals

who was threatening him.   Plaintiff had an altercation with a different inmate, which

resulted in Plaintiff injuring himself.   Plaintiff's averments do not establish that

Defendants were subjectively aware of a substantial risk of harm from an individual that

*actually* harmed Plaintiff.  All Plaintiff has alleged is that Defendants were aware of

others threatening Plaintiff, but who never actually caused the injury to Plaintiff's arm.

Plaintiff's claim that safety glass broke when he put his own arm through it does not

amount to deliberate indifference.  Nothing in Plaintiff's Complaint suggests that

15

Defendants were aware of the risk presented by the faulty safety glass or that they were deliberately indifferent to that risk.  Therefore, the First Claim for relief against Defendants Young, Gallegos, and Lt. Johnson should be dismissed.

Plaintiff also implicates Defendant Warden Bobby Johnson in his First Claim for relief.   He claims that "Warden Bobby Johnson was said to have known about plaintiff's request for protective custody" and that he "<u>knew</u> of the dangers plaintiff was in and yet <u>refused</u> to place him in protective custody." **Compl., p. 5.**   However, Plaintiff does not alleged that Defendant Bobby Johnson personally participated in or that the approved or acquiesced to the alleged constitutional deprivation.  ***See Bennett v. Passic,*** 545 F.2d 1260, 1262-63 (10th Cir. 1976) (finding that personal participation is an essential element of a claim brought against a state official); ***Woodward v. City of Worland,*** 977 F.2d 1392, 1400 (10th Cir. 1992) (finding that supervisor must personally direct the constitutional deprivation or approved/acquiesced to them in order to find supervisor liable).   Therefore, Plaintiff's First Claim against Defendant Warden Bobby Johnson fails to state a claim for relief under § 1983 and should be dismissed.

### 3.     *Plaintiff's Second Claim for Relief.*

Plaintiff captions his Second Claim for relief against these Defendants as "Negligent of a prisoners (sic) important need for medical treatment is a violation of 42 U.S.C.S. § 1983 Const. Amend. Cruel and Unusual punishment."  However, in order to state a cognizable Eighth Amendment claims for failure to provide medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  ***Olson,*** 9 F.3d at 1477.  Here, Plaintiff is

16

challenging the adequacy of his medical care and claiming that Defendants were negligent in the administration of that care.   However, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation. *Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999).  Therefore, Plaintiff's claim does not give rise to deliberate indifference so as to constitute an Eighth Amendment violation.

Further, none of Plaintiff's allegations are directed against any of the R.C.C. prison officials.  Although Plaintiff names Defendants R.C.C. in his Complaint, the Complaint is devoid of allegations concerning the participation of these Defendants. Plaintiff fails to allege any policy, custom or practice by R.C.C. that could have conceivably violated his constitutional rights. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (finding that an entity is liable for an employee's acts under § 1983 only if the plaintiff can show that a custom or policy directly caused the constitutional violation).  Further, Plaintiff fails to allege that similar constitutional violations occurred to individuals other than Plaintiff. *See Randle v. City of Aurora,* 69 F.3d 441, 447 (10th Cir. 1995) (finding that such a showing is required to establish that a custom or practice existed).  Therefore, Plaintiff's Second Claim for relief against Defendant R.C.C. should be dismissed.

### 4.    *Plaintiff's Fourth Claim for Relief.*

Assuming *arguendo* that Plaintiff's Fourth Claim implicates these Defendants, it, too, fails to state a claim.  Claim Four arises from the alleged failure to prevent a riot while he was housed at CCCF.  He claims that during the riot at CCCF, unnamed

17

prison officials and guards "failed to take precautions to protect inmates not involved in the riot."   Specifically, Plaintiff alleges that "[h]is life was in danger because of CDOC's, CCCF's, CCA's, WSDOC's rouge regimes.  The official named from these departments are all or partly to blame."  Again, Plaintiff fails to allege personal participation in a constitutional violation on the part of the CDC or RCC officials; nor do his conclusory allegations reflect deliberate indifference on their part.   Therefore, this claim should be dismissed against these Defendants.

Accordingly, **IT IS RECOMMENDED** as follows:

1.      That Defendants, Bridges, Crouse, Miller, Hale, Selmon, Crowley County Correctional Facility ("CCCF"), and Correction Corporation of America's ("CCA") Motion to Dismiss [#19], filed on July 11, 2005, **BE GRANTED;**

2.      That Defendant Washington Department of Corrections' ("WDC") Motion to Dismiss [#24], filed on July 25, 2005, **BE GRANTED;**

3.      That Defendant Park County Detention Center's ("PCDC") Motion to Dismiss [#26], filed on July 25, 2005, **BE GRANTED;**

4.      That Defendant Warden Johnson, Lieutenant Johnson, Horton, Gallegos, Young, Colorado Department of Corrections ("CDC"), Denver Reception and Diagnostic Center ("DRDC"), and  Rifle Correctional Center's ("RCC"),  Motion to Dismiss [#31], filed on August 9, 2005, **BE GRANTED;** and

5.      That this civil action **BE DISMISSED WITH PREJUDICE.**

## IV.      Advisement to the Parties

18

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  **28 U.S.C. § 636(b)(1); F**ED**. R. C**IV**. P.  72(b)**;  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  **28 U.S.C. § 636(b)(1)**.  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  ***See In re Griego***, 64 F.3d at 583;  ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  ***One Parcel of Real Property***, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  ***See Vega v. Suthers***, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver

rule"); ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); ***International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.***, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); ***Ayala v. United States***, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

**DATED** at Denver, Colorado, this 13th day of October, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge